UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

PHILLIP HAROLD BATES,

        Plaintiff,                    Case No.  1:15-CV-739

v.

                                              HONORABLE PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

                                     /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Phillip Bates seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 38 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.47, 76.) He completed the eighth grade and was previously employed as a fry cook, material handler, and kitchen helper. (PageID.78, 98.) Plaintiff applied for benefits on January 24, 2013, alleging that he had been disabled since November 27, 2012, due to problems associated with his spine, radiating nerve pain from his back to legs and toes, torn ligaments in his right and left shoulder, osteophyte in his right shoulder, problems with his left and right biceps, and a learning disability. (127–28, 143–44, 209–220.) Plaintiff's applications were denied on March

29, 2013, after which time he requested a hearing before an ALJ. (PageID.160–69.) On November 15, 2013, Plaintiff appeared with his counsel before ALJ Carol Guyton for an administrative hearing, with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.70–104.) In a written decision dated February 26, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.47–69.) On May 20, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.23–26.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at the fifth step of the analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (PageID.53.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) obesity; (2) rotator cuff tear in the left shoulder and partial rotator cuff tear in the right shoulder with mild degenerative changes in the acromioclavicular joint; (3) degenerative disc disease of the lumbar spine with lipomotisis causing canal stenosis; (4) history of borderline intellectual functioning; and (5) depression/anxiety. (PageID.53.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.54–56.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting/carrying twenty pounds occasionally, ten pounds frequently; standing/walking up to four hour[s] in an eight-hour workday; and sitting up to six hours in an eight-hour workday. He needs a sit/stand option because he is limited to standing and sitting for twenty to thirty minutes at a time. The claimant uses a cane for ambulation but does not need the cane when standing. The claimant can use his upper extremities for frequent pushing and pulling; but cannot reach overhead. He can occasionally kneel, crouch, crawl, bend, stoop and climb ramps and stairs; but cannot climb ladders, ropes or scaffolds. The claimant needs to avoid concentrated exposure to extreme cold, vibration, hazardous machinery and unprotected heights. He is further limited to simple

>   routine tasks involving no more than simple short instructions and simple work-related decisions with few work place changes, and no contact with the general public.

(PageID.57.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work.  (PageID.62.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform the following work: machine tender (7,800 jobs in Michigan), packager (6,300 jobs in Michigan), and assembler (14,000 jobs in Michigan).  (PageID.99–100.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.63.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from November 27, 2012, through the date of the decision.  (PageID.63–64.)

## DISCUSSION

### 1. Plaintiff's RFC is Supported by Substantial Eidence

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also*, SSR 96–8p, 1996 WL 374184 at *1 (S.S.A., July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").  As noted above, the ALJ concluded that Plaintiff retained the RFC to perform a limited range of light

work.[2] Plaintiff argues that the ALJ erred in several respects when she found he was able to perform light work. First, Plaintiff claims that his prescribed use of a cane precludes his ability to perform light work; second, that the ALJ failed to follow internal agency guidelines; and third that his limitations are incompatible with light work. The Court disagrees.

At the hearing, Plaintiff testified that he had been prescribed a cane several years ago by a physician. (PageID.81–82.) The record does not contain that prescription, although several physicians observed Plaintiff's use of a cane. (PageID.544, 584, 655.) In any event, the ALJ determined that Plaintiff required a cane to ambulate, but not to stand. (PageID.57, 100.) Plaintiff argues that this requirement is incompatible with light work and points to an opinion from this Court in support. (PageID.696–97.) In *Love v. Commissioner of Social Security*, 605 F.Supp.2d 893 (W.D. Mich. 2009), the undersigned adopted the report and recommendation of the magistrate judge who found a "fundamental illogic" to the ALJ's determination that the claimant was able to carry twenty pounds while needing a hand-held assistive device. *Id.* at 907. The Court does not find the same illogic to be present here. In this instance, the Court discerns no reason why Plaintiff cannot use a cane with one hand while carrying objects with the other. The VE specifically questioned whether Plaintiff would need the cane to stand, and when the ALJ responded that Plaintiff would not need a cane when standing, identified a significant number of unskilled light jobs while

---

[2]"The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position." SSR 83-10, 1983 WL 31251, at *5 (S.S.A., 1983).

contemplating Plaintiff's use of a cane to ambulate. (PageID.100.) Plaintiff's counsel did not question the VE on this point. Indeed, the administration's definition of light work notes that "[m]any unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." SSR 83-10, 1983 WL 31251, at *6 (S.S.A., 1983). Accordingly, the Court rejects this argument.

Plaintiff next alleges that his use of a cane, in addition to the inclusion of a sit/stand requirement and limitation to only four hours of standing or walking in a workday, "significantly reduced" his capacity for light work, and accordingly the ALJ erred by using light work as a framework for finding him not disabled at step five, as directed by the Commissioner's Program Operations Manual System (POMS). Plaintiff argues the ALJ should have applied a sedentary RFC instead. (PageID.697.) The Court sees no reversible error. The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Pt. 404, Subpt P, App. 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Comm'r of Soc. Sec.*, 20 F.Supp.2d 1133, 1134 (W.D. Mich. 1998).

However if, as in this case, a claimant's RFC does not coincide with the definition of one of the ranges of work because the claimant has nonexertional limitations that may erode the

occupational base, the Commissioner uses the grids only as a framework for decision making and relies on other vocational evidence, such as VE testimony, to determine whether the claimant can still do a significant number of jobs with those nonexertional limitations. *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990). Plaintiff argues the ALJ applied the wrong rule as a framework under POMS rule 25025.015. POMS, however, is an internal agency manual. Its guidelines have no legal force, and failure to follow the POMS is not legal error. *See Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law."). POMS guidelines, where applicable, provide persuasive authority. *Id.* Because Plaintiff has identified no reversible error, this claim is rejected.

Finally, it appears Plaintiff argues he is disabled because of his arm and hand limitations. (PageID.697–98.) To the extent Plaintiff argues this is so because of the limitations the ALJ included in the RFC, the VE testimony providing a significant number of jobs despite these limitations demonstrates Plaintiff's argument is incorrect. To the extent Plaintiff argues he is further limited in this regard, he fails to point to supporting evidence. Indeed the ALJ noted that Plaintiff reported no dropping of objects, no difficulty buttoning, and no deterioration in his handwriting. (PageID.60, 596.) Dr. Malcom Brahms found that Plaintiff could continuously handle, frequently finger, and occasionally feel. (PageID.644.). Plaintiff's burden on appeal is much higher than citing evidence on which the ALJ could have found a greater level of restriction, which he has not even done here. He must show that the ALJ's factual finding is not supported by substantial evidence. *See Jones*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial

evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). The Court does not doubt that Plaintiff is limited the use of his upper extremities, however such limitations are adequately accounted for in the RFC.

For all the above reasons, Plaintiff's first claim of error is denied.

### 2. The ALJ Adequately Discussed the Medical Opinions in the Record.

Plaintiff next claims the ALJ erred in failing to provide weight, or adequate weight, to several opinions in the record. (PageID.698–700.) Plaintiff first argues the ALJ failed to assign any weight to the opinions of Dr. Hayden Boyce, Dr. Jirish Juneja, and Mr. Jonathan Bjork, a licensed professional counselor. (PageID.698.) While Plaintiff argues the ALJ failed to assign weight to their opinions, he fails to identify, either in his factual summary or argument, any medical opinion by these individuals that was not considered by the ALJ. Plaintiff cannot demonstrate that the ALJ erred in failing to consider an opinion when he himself has failed to identify any opinion the ALJ supposedly overlooked. Medical opinions, "are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis," physical and mental restrictions, and what the claimant can still do despite his or her impairments. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The notes referenced by Plaintiff in his factual summary mainly restate Plaintiff's subjective complaints or list the diagnoses of various impairments. None of them contain a medical opinion consistent with the aforementioned definition. But even if the Court were to consider these notes as containing a medical opinion, none of the notes identified by Plaintiff in his factual summary are inconsistent with the ALJ's RFC determination, and accordingly any such error is

harmless. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (finding harmless error when an ALJ fails to follow the procedural requirements for considering medical opinions if the ALJ has made findings consistent with the opinion).

Plaintiff also argues the ALJ improperly adopted the opinion of Dr. Malcom Brahms, the non-examining medical expert (ME) who filled out an interrogatory after the hearing. The thrust of Plaintiff's argument is that the ALJ should have deferred to the opinion of Mr. Rob Poehl, a physician's assistant. The issue before the ALJ involved weighing the opinion of an other source, with the opinion of a non-examining ME, Dr. Brams. "It is the Commissioner's function to resolve conflicts in the medical evidence." *Craft v. Comm'r of Soc. Sec.*, 39 F. App'x 274, 276 (6th Cir. 2002).

"As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source')." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). However, as a physician's assistant, Mr. Poehl is not an acceptable source and his opinion was not entitled to any particular weight. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06-03p, 2006 WL 2329939, at *1 (S.S.A., Aug. 9, 2006); *see also Hickox v. Comm'r of Soc. Sec.*, No. 1:09-cv-343, 2011 WL 6000829, at *4 (W.D. Mich. Nov. 30, 2011). As such, the ALJ was only required to "consider" this evidence. While the regulations note that the factors in 20 CFR §§ 404.1527(c), 416.927(c), "can" be applied to the opinion, the ALJ was only required to "consider" Mr. Poehl's opinion. SSR 06–03p, at *2, *6. This

is not a demanding standard, and was easily met here.

Plaintiff's argument is that the ALJ needed to give more weight to Mr. Poehl's opinion because he examined Plaintiff and had treated Plaintiff for a long period of time. Plaintiff is correct that an examining relationship and length of treatment are factors an ALJ is to consider when weighing medical opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also McClean v. Colvin*, No. 3:11–cv–236, 2013 WL 4507807, at *8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors[.]"). However, the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from an individual who is not an 'acceptable medical source'[.]" SSR 06-03p at *5. Consistency is another important factor: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). In addition, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D.Ohio Sept.30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2) (i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir.2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). The ALJ noted Mr. Poehl examined Plaintiff and had treated him for over ten years, but gave the opinion little weight because his opinion was inconsistent with the record. The Court finds no error here.

Plaintiff attempts to bolster his argument by noting that the ME was of advanced age,

and had previously been disciplined by the State Medical Board of Ohio. (PageID.320–24, 699.) The ALJ thoroughly examined this argument, and concluded that the ME was nonetheless qualified to provide opinions for the administration. (PageID.50.) Plaintiff points to no authority demonstrating error on this point.

For all the above reasons, Plaintiff's arguments regarding the medical opinions in the record are rejected.

### 3. The Court Cannot Trace the Path of the ALJ's Credibility Analysis.

At the beginning of the ALJ's RFC discussion, she listed Plaintiff's subjective allegations, and then provided this statement:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(PageID.58.) The ALJ went on to provide a discussion of the medical and opinion evidence. (PageID.58–62.) Plaintiff claims the ALJ failed to properly consider his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x. 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated

pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x. at 801 (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x. 508, 511 (6th

Cir. 2013) (citation omitted).

Plaintiff contends that the ALJ used meaningless boilerplate language to evaluate his credibility. Where a claimant contends that the ALJ made only a "boilerplate" credibility finding, this contention has no merit where the ALJ provided a thorough explanation elsewhere in the decision setting forth his reasons for doubting the claimant's account. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015). However, as the *Cox* court also noted, the use of boilerplate language in a credibility analysis comes with "the risk that an ALJ will mistakenly believe it sufficient to *explain* a credibility finding, as opposed to merely introducing or summarizing one." *Id.* (emphasis in original.) The ALJ seems to have made that mistake here. The Commissioner provides several reasons why the ALJ could have found Plaintiff not to be credible, but these were not articulated by the ALJ. The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (S.S.A., July 2, 1996). The ALJ "must articulate, at some minimum level, [her] analysis of the evidence to allow the appellate court to trace the path of [her] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995). The ALJ has note done so here, and accordingly this matter must be remanded for further consideration of Plaintiff's credibility.

    **4.  Remand is Appropriate.**

Plaintiff asks for an award of benefits. (PageID.700–01.) While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes his

14

entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks*, 531 F. App'x at 644. This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also Brooks*, 531 F. App'x at 644. This case is being remanded because the ALJ's credibility analysis is flawed, not because there is compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be **REVERSED** and this matter is **REMANDED** for further factual proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Plaintiff's credibility and, if Plaintiff is found not to be credible, provide reasons why this is so.

A separate judgment shall issue.


Dated: September 6, 2016          /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge